**The PEOPLE of the State of Colorado, Complainant,**

v.

**Michael Jay SHIDLER, Attorney–Respondent.**

**No. 95SA223.**

Supreme Court of Colorado, En Banc.

Aug. 28, 1995.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Asst. Disciplinary Counsel, Denver, for complainant.

Gary Lozow, Denver, for attorney-respondent.

PER CURIAM.

The respondent has admitted in a stipulation, agreement, and conditional admission of misconduct, C.R.C.P. 241.18, that he commingled personal and client funds, and that he negligently made unauthorized transfers of client funds. An inquiry panel of the supreme court grievance committee approved the conditional admission, including the recommendation that the respondent be publicly censured. Given the factors in mitigation, we have concluded that a public censure is an adequate sanction in conjunction with certain financial monitoring conditions, and we therefore accept the conditional admission.

## I

The respondent was admitted to the Colorado bar in 1980, and since 1981 has specialized in tax matters. The conditional admission reveals that in 1991 and part of 1992, the respondent maintained various trust accounts, one of which was a "retainer account" for the deposit of fees advanced by clients. The respondent allowed fees that he had earned to accumulate in the retainer account without transferring them, thus commingling personal and client funds.[1] Moreover, the respondent used the retainer account for personal business transactions, af-

---

1. Permitting earned fees (which are the property of the lawyer), to accumulate in an account containing unearned or advance fees (which remain client property until earned), as well as other client funds, constitutes commingling. *See People v. Rodriguez*, 889 P.2d 681, 683 (Colo.1995) (depositing earned fees in trust account containing client funds violated DR 9–102(A) because lawyer thereby commingled personal funds with client funds); *People v. Brown*, 863 P.2d 288, 290 (Colo.1993) (depositing unearned retainers into business operating account, and spending an unearned client retainer, violated DR 9–102(A), which required lawyers to deposit *client funds* in a separate account); *see also* Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments Be Deposited to the Client Trust Account or to the General Office Account?*, 10 Cardozo L.Rev. 647 (1989) (endorsing the majority view that unearned retainers or advance fee payments should be deposited in client trust accounts).

ter commingling the client funds with his own personal funds.

Beginning in March or April 1992, the respondent used only one trust account for the deposit of all client funds. In October and November 1992, the respondent received funds from three different clients, which he deposited in his trust account and held for the clients' benefit in order to make offers of compromise to the Internal Revenue Service.

On two occasions during November 1992, the respondent transferred $10,000 out of the trust account which reduced the balance of the account below the amount necessary for the IRS settlement offers. The first $10,000 was transferred to the respondent's personal checking account. This transfer resulted from an oversight, and was not intentional. The respondent made the second $10,000 transfer to a stock broker believing that $10,000 of his personal funds had mistakenly been wired into the trust account. When the bank corrected the wiring error, however, it created a further imbalance in the trust account.

The respondent's spouse had assumed the responsibility for managing and balancing the trust account. In late 1992, however, she was experiencing various problems, and she did not balance or review the November and December 1992 bank statements until January 1993. When she told him that there was a shortage in the trust account, the respondent immediately transferred personal funds to remedy part of the shortfall, and by February 2, 1993, he had transferred enough personal funds to cover the IRS client funds. The respondent's assertion that the two November 1992 transfers from the trust account were made as a result of negligence rather than knowledge or intent is supported by the absence of evidence that he needed to use client funds for personal reasons because of any shortage of personal or business funds.

The foregoing conduct violates DR 1–102(A)(6) and R.P.C. 8.4(h) (conduct that adversely reflects on the lawyer's fitness to practice law), as well as DR 9–102(A) and R.P.C. 1.15(a) (commingling of personal and client funds). The assistant disciplinary counsel has stipulated that it cannot be established by clear and convincing evidence that the respondent's transfer of the funds from the trust account was dishonest, in violation of DR 1–102(A)(4) or R.P.C. 8.4(c).

## II

■ Negligent handling of client funds warrants a public censure, at the least. *See People v. Cantrell,* 900 P.2d 126, 128 (Colo. 1995) (in the absence of aggravating or mitigating factors, public censure is appropriate when a lawyer is negligent in dealing with client funds and causes injury or potential injury to a client, citing ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*) 4.13). The misconduct in this case involved commingling of personal and client funds as well as the subsequent negligent unauthorized transfers (and thus technical conversions) of client funds. Commingling is dangerous to the client and a serious disciplinary offense because it can subject client funds to the claims of the lawyer's creditors. *People v. McGrath,* 780 P.2d 492, 493–94 (Colo.1989). Even though the assistant disciplinary counsel has stipulated that no client sustained actual injury, the potential for harm was present. If it were not for certain mitigating factors, a suspension would be in order, *id.* at 493; ABA *Standards* 4.12 (suspension appropriate when a lawyer knows or should know that the lawyer is dealing improperly with client property), and we would reject the conditional admission.

■ The respondent has no prior disciplinary history. ABA *Standards* 9.32(a). He has cooperated fully with the Office of Disciplinary Counsel, *id.* at 9.32(e); had no dishonest or selfish motive, *id.* at 9.32(b); and has expressed remorse for the misconduct. *id.* at 9.32(*l*). Moreover, in 1993, the respondent was diagnosed with attention deficit hyperactivity disorder. The respondent's treating physician is of the opinion that the mental disorder was a major cause of the respondent's mishandling of the trust funds, but that so long as the respondent takes the appropriate medication, which he is doing now, he will not engage in similar misconduct.

A mental disability is a mitigating factor under ABA *Standards* 9.32(i), which provides:

(i) mental disability ... [may be considered as a mitigating factor] when:

(1) there is medical evidence that the respondent is affected by a ... mental disability;

(2) the ... mental disability caused the misconduct;

(3) the respondent's recovery from the ... mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

ABA *Standards* 9.32(i) (Supp.1992). *See also People v. Lujan,* 890 P.2d 109, 112 (Colo. 1995). Considering the factors in mitigation, and the financial monitoring conditions that the respondent has consented to, we accept the stipulation, agreement, and conditional admission of misconduct, and the recommendation of the inquiry panel.

### III

It is hereby ordered that Michael Jay Shidler be publicly censured, and that he keep financial records and submit annual audits to the Office of Disciplinary Counsel in accordance with the financial monitoring conditions in the conditional admission. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,128.22 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.