**The PEOPLE of the State of Colorado, Complainant,**

v.

**Randolph A. SIGLEY, Attorney–Respondent.**

**No. 96SA115.**

Supreme Court of Colorado, En Banc.

June 3, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Randolph A. Sigley, Colorado Springs, Pro Se.

PER CURIAM.

The hearing board in this lawyer discipline matter recommended that the respondent be suspended from the practice of law for thirty days for professional misconduct. A hearing panel of the supreme court grievance committee approved the board's findings and recommendation. Neither of the parties has excepted to the panel's or board's actions. We accept the recommendation and order that the respondent be suspended for thirty days.

I

The respondent was admitted to the Colorado bar in 1984. The formal complaint filed against the respondent contained three counts. The assistant disciplinary counsel moved to dismiss Count I immediately prior to the hearing, and the board granted the motion. Based on the evidence presented to it, the hearing board found the following to be established by clear and convincing evidence.

A

Jennifer G. Pasternak hired the respondent in September 1992 to handle certain post-dissolution issues. She paid him $1,618 in anticipation of respondent's efforts on her behalf. The respondent was to represent Pasternak in enforcing a child support provision, and with the modification of visitation provisions contained in a North Dakota divorce judgment. The client was particularly concerned about the visitation provisions because her daughter had become emotionally distraught after a summer visit with Pasternak's ex-husband.

Pasternak testified at the hearing that the respondent did not contact her concerning the dissolution issues, and she therefore made a visit to his office on January 15, 1993 and requested an accounting of the charges incurred in her case. The respondent did not, however, provide her with the requested accounting at that time and failed to contact her regarding progress on those matters. Except for a brief chance encounter at a store on February 25, 1993, respondent failed to communicate with Pasternak. Pasternak went to the respondent's office on the following day, told him that she had consulted with another lawyer, and then discharged the respondent. At that time, she gave him a letter noting that she had not received a written fee agreement, any accounting for fees assessed against her advance fee, or any paperwork verifying that any work had actually been performed on her case. The letter asked the respondent to return both Pasternak's file and her advance fee by March 5, 1993.

Despite these requests and requests by Pasternak's new lawyer, the respondent did not return the unused funds until September 14, 1993, contrary to R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as refunding any advance payment of fee that has not been earned).[1]

B

On December 9, 1991, Don Fagan consulted with and paid the respondent $1,100 for

---

1. Because of conflicting evidence, the hearing board was unable to find by clear and convincing evidence that the respondent did not provide Pasternak with a full accounting of the charges he assessed her; or that the respondent failed to deliver Pasternak's file to her as requested.

legal services related to the dissolution of Fagan's marriage. The respondent had previously represented Fagan's then girlfriend in a post-decree matter involving her former husband. The respondent filed a dissolution petition on behalf of Fagan, and the temporary orders hearing was held on February 15, 1992.

When Fagan met with the respondent in December 1991, he expressed the intent to file for bankruptcy at some time in the future. On May 4, 1992, Fagan again discussed the bankruptcy with the respondent, and subsequently paid the respondent $620 for the bankruptcy and filing fees on May 26, 1992. Fagan and the respondent disagreed at the hearing as to whether the respondent was supposed to file the bankruptcy petition then or wait until the dissolution matter was resolved. In any event, on September 21, 1992, Fagan received notice that his wages were being garnished by one of his creditors. He contacted the respondent and asked the respondent to file the bankruptcy petition that day. After being paid an additional $30 to file an answer to the garnishment, the respondent filed the bankruptcy petition on September 23, 1992.

Prior to filing the bankruptcy petition, however, the respondent asked Fagan to sign a reaffirmation agreement with respect to the attorney fees owed in the dissolution matter. He told Fagan that he would be unable to continue to represent him if Fagan did not sign the agreement. The purpose of such an agreement was to reaffirm the debt to the respondent and prevent the debt from being discharged in bankruptcy. At the time the agreement was discussed and signed by Fagan, the respondent did not advise his client that they had differing interests or that Fagan should consult with an independent lawyer.

In any event, the reaffirmation agreement was unenforceable because it was not filed with the court as required by the bankruptcy code, nor was it in the proper form required by federal law. Moreover, the hearing board heard testimony from an expert in bankruptcy who stated that the agreement was unenforceable because it was signed prior to the filing of the bankruptcy petition.

The respondent sent a bill to Fagan in August 1992 in the amount of $1,768.75. He failed to provide an accounting of his charges as requested, however. Further, in March 1993 the respondent brought an action against Fagan for unpaid attorney fees. The parties settled the case in April 1993, and Fagan paid the respondent $1,692.

The hearing board determined that the foregoing conduct violated DR 5–104(A) (a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure). In addition, the respondent was obligated to verify that the reaffirmation agreement was valid before pursuing legal action against Fagan, and he deliberately ignored that obligation. His course of conduct in failing to file a valid reaffirmation agreement and then suing Fagan for attorney fees and receiving a significant amount in settlement therefore violated DR 1–102(A)(4) and R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). *See People v. Rader,* 822 P.2d 950, 953 (Colo.1992) (element of scienter necessary for violation of DR 1–102(A)(4) established when attorney deliberately closes his eyes to facts that he had a duty to see, or has recklessly stated as facts things of which he was ignorant).[2]

## II

The hearing panel approved the board's recommendation that the respondent be sus-

---

**2.** The hearing board could not find by clear and convincing evidence that the respondent had also violated DR 1–102(A)(5) and R.P.C. 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); or DR 9–102(B)(3) (failure to render appropriate accounts regarding client property).

pended for thirty days. Neither party has excepted to the panel's action.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." *ABA Standards* 4.32. On the other hand, public censure is warranted if the lawyer is at most "negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33.

Suspension is also "appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." *Id.* at 4.62. But a public censure is warranted "when a lawyer knowingly engages in ... [noncriminal] conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." *Id.* at 5.13.

The hearing board found that the respondent had been cooperative in the proceedings, which is a mitigating factor. *Id.* at 9.32(e). In aggravation, however, the respondent exhibited a dishonest or selfish motive, *id.* at 9.22(b); there are multiple offenses, *id.* at 9.22(d); the respondent has refused to acknowledge the wrongful nature of his conduct, *id.* at 9.33(g); and the respondent's victims were vulnerable, *id.* at 9.22(h). Finally, because the respondent received three letters of admonition for misconduct occurring during the same time period as the misconduct in this case, there is a pattern of misconduct. *Id.* at 9.22(c).

Given the factors in aggravation, at least a short period of suspension is warranted. While a period greater than thirty days may be appropriate, given the circumstances of this case we have nevertheless elected to accept the board's and panel's recommendation.

## III

Accordingly, it is hereby ordered that Randolph A. Sigley be suspended from the practice of law for thirty days, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that the respondent pay the costs of this proceeding in the amount of $1,885.75 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202, within 90 days after the announcement of this opinion.