**In the Matter of Larry D. SATHER, Attorney–Respondent.**

No. 99SA72.

Supreme Court of Colorado, En Banc.

May 22, 2000.

As Modified on Denial of Rehearing June 12, 2000.*

---

* Justice COATS does not participate.

John S. Gleason, Attorney Regulation Counsel James S. Sudler, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

Law Office of George S. Meyer George S. Meyer, Denver, Colorado, Attorney for Attorney–Respondent.

Jane Hazen, Denver, Colorado, Attorney for Amicus Curiae Colorado Criminal Defense Bar.

White & Steele, P.C., John Lebsack, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this attorney regulation proceeding, we address the conduct of the attorney-respondent, Larry D. Sather, who spent and failed to place into a trust account $20,000 he received as a "non-refundable" advance fee for a civil case. Because Sather treated these funds as his own property before earning the fee, Sather's conduct violated Colo. RPC 1.15(a). Sather labeled the $20,000 fee "non-refundable" even though he knew that the fee was subject to refund under certain circumstances, thereby violating Colo. RPC 8.4(c). After being discharged by his client, Sather failed to return all of the unearned portion of the $20,000 promptly, in violation of Colo. RPC 1.16(d).

In this original proceeding, we hold that an attorney earns fees by conferring a benefit on or performing a legal service for the client. Thus, under Colo. RPC 1.15 an attorney cannot treat advance fees as property of the attorney and must segregate all advance fees by placing them into a trust account until such time as the fees are earned.[1] An attorney cannot label advance fees "non-refundable" because it misleads the client and risks impermissibly burdening the client's right to discharge his attorney, in violation of Colo. RPC 8.4(c) and 1.16(d).

After a hearing on the matter, the hearing board recommended that Sather be suspended for a year and a day as discipline for his violations of Colo. RPC 1.15(a), 1.16(d) and 8.4(c).[2] We disagree with the board's recommendation. Because we have not previously explained that all advance fees, including "lump-sum" fees and "flat fees," must be placed into trust accounts and withdrawn only as the attorney performs services or

1. We note that in some narrow circumstances, discussed in greater detail in section III.C., *infra*, an attorney and client may agree to allow the attorney to treat unearned advance fees as property of the attorney.

2. By order of the supreme court dated June 30, 1998, effective January 1, 1999, the grievance committee was superceded by the reorganization of the attorney regulation system. *See* Order re Reorganization of the Attorney Regulation System (Colo. June 30, 1998), *reprinted in* 12 C.R.S. at 605 (1999). This case was tried on November 17, 1998, and was reviewed by the hearing panel on February 23, 1999.

confers benefits on the client, we do not impose a sanction on Sather for his violation of Colo. RPC 1.15(a). However, we agree with the hearing board that Sather be disciplined for violating Colo. RPC 1.16(d) and 8.4(c). Because Sather knowingly mishandled client funds and knowingly deceived a client, and in light of Sather's disciplinary history, we suspend Larry D. Sather for six months. Further, as a condition of reinstatement, Sather must demonstrate his fitness to practice by undergoing proceedings pursuant to C.R.C.P. 251.29, even though the term of the suspension is less than one year.

## II. FACTS AND PROCEDURAL BACKGROUND

The hearing board found the following facts were established by clear and convincing evidence. Sather agreed to represent Franklin Perez in a lawsuit against the Colorado State Patrol and certain individual troopers. Perez alleged that the troopers violated his civil rights during a traffic stop on December 7, 1995. Almost a year after the stop, on November 15, 1996, Sather and Perez entered into a written agreement for legal services, captioned "Minimum Fee Contract." Sather drafted the agreement, the terms of which required Perez to pay Sather $20,000 plus costs to represent Perez in the case against the State Patrol. Sather testified that he had never charged this large an amount as a flat fee in a civil case.

The contract referred to the $20,000 alternatively as a "minimum fee," a "non-refundable fee," and a "flat fee." The contract stated that Perez understood his obligation to pay this fee "regardless of the number of hours attorneys devote to [his] legal matter" and that no portion of the fee would be refunded "regardless of the time or effort involved or the result obtained." The contract acknowledged Perez's right to discharge Sather as his attorney, but the contract informed Perez that in no circumstance would any of the funds paid be refunded:

**IN ALL EVENTS, NO REFUND SHALL BE MADE OF ANY PORTION OF THE MINIMUM FEE PAID, RE-GARDLESS OF THE AMOUNT OF TIME EXPENDED BY THE FIRM.**

The client has been advised that this is an agreed flat fee contract. The client acknowledges that the minimum flat fee is the agreed upon amount of $20,000, **regardless of the time or effort involved or the result obtained.**

(Emphasis in original.) Thus, the contract stipulated that Perez pay Sather $20,000 for his legal services; that he pay all legal costs incurred by Sather in the case; and that no funds would be refundable after Perez paid Sather the flat fee of $20,000.[3]

Perez paid Sather $5,000 of the minimum fee on November 17, 1996. He paid the remaining $15,000 on December 16th. Sather spent the $5,000 soon after receiving the money. Sather kept the second payment of $15,000 for approximately one month before spending these funds. Sather did not place any of these funds in his trust account before spending them. Sather testified that he spent Perez's $20,000 because he believed he earned the fees upon receipt. Sather stated that while he could not cite a specific rule for this opinion, he thought it was a common practice in the legal community to treat flat fees as being earned on receipt.

Less than a month after agreeing to represent Perez, on December 6, 1996, Sather filed suit in Denver District Court on behalf of Perez against the State Patrol and three troopers. In addition to claims for tort and civil rights injuries, the complaint included a claim for attorney's fees. The Attorney General's Office, which represented the State Patrol and three troopers, negotiated with Sather and offered Perez a $6,000 settlement, which Perez refused. Sather then requested an extension of time to respond to a pretrial motion, which the court granted.

On April 21, 1997, in a matter unrelated to the Perez case, this court suspended Sather from the practice of law for thirty days, effective May 21, 1997. *See People v. Sather,* 936 P.2d 576, 579 (Colo.1997). As required, Sather notified Perez of his suspension and Perez responded on May 23, requesting an

---

**3.** In contrast to the contract's language, Sather testified that he knew that the fees were subject to refund and that he "never treated the fees as non-refundable."

accounting of the hours Sather worked on his case. Perez requested that Sather provide the accounting by May 30, but Sather replied that he would be unable to provide this information until the third week of June. Thereafter, on June 4, 1997, Perez faxed Sather notice discharging him from his case because of the suspension.

Acting pro se, Perez received an extension of time to file a response to the State Patrol's motion after informing the court that he was seeking replacement counsel to handle the case. Then, on August 21, 1997, Perez wrote a letter to the Attorney General's Office, accepting the offer of $6,000 to settle all of his claims against the State Patrol and the troopers. In its findings of fact, the hearing board noted that the attorney for the Attorney General's office did not exert any pressure on Perez to settle the case and further noted that that the Attorney General's Office would have agreed to an extension of time had Perez needed it to obtain substitute counsel.

Sather provided the accounting requested by Perez on June 27, 1997. Sather claimed that his fees, his paralegal assistant's fees, costs and expenses in Perez's case as of the date of discharge totaled $6,923.64. At that time, Sather acknowledged that he should refund $13,076.36, the balance of the $20,000 paid by Perez.

Despite acknowledging his duty to return the unearned $13,076.36 to Perez, Sather did not refund any money to Perez because at the time of discharge he had spent Perez's funds. On September 3, 1997—three months after Perez discharged him—Sather paid Perez $3,000. Sather paid the remaining $10,076.36 on November 2, 1997. The hearing board found that this delay prejudiced Perez because he did not have access to his funds for almost five months.

At the time Sather and Perez entered into the flat fee agreement, Sather was involved in personal bankruptcy proceedings. Sather filed a Chapter 7 bankruptcy proceeding in U.S. Bankruptcy Court in March 1995, over a year before agreeing to represent Perez. Sather later converted this case to a Chapter 13 proceeding, and then attempted to reconvert the case to a Chapter 7 filing. At the time of the hearing, the bankruptcy case was still pending. During the representation, Sather never told Perez that he had declared bankruptcy. After discharging Sather, Perez hired an attorney to pursue a claim against Sather in the bankruptcy proceeding for a refund of the fees ($6,923.64) Sather charged for work on Perez's suit.

Much later, in June 1998, Perez and Sather agreed to an arbitration by the Colorado Bar Association concerning the amount of fees charged by Sather for his work. The arbitrator awarded Perez $2,100.00, which represented the cost to Perez to bring the arbitration action. The arbitrator did not award Perez any recovery of the fees Sather charged for work performed. Shortly before the hearing in this case, on November 17, 1998, Sather paid Perez the award.

After a hearing, the board recommended that Sather be suspended for a year and a day. The board found that Sather violated Colo. RPC 1.16(d) by failing to return Perez's funds for nearly five months after Perez discharged him.[4] The board concluded that because Sather admitted that he knew he had an ethical obligation to refund any unearned fees to Perez, the characterization of Perez's fee as "non-refundable" constituted a material misrepresentation. Thus, Sather violated Colo. RPC 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.[5]

In addition to these violations, the board found that Sather violated Colo. RPC 1.15(a)

4. Colo. RPC 1.16(d) requires that if a client discharges her attorney, the attorney must take reasonably practicable steps to protect the client's interests:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee of that has not been earned. . . .

5. Colo. RPC 8.4(c) states that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

by negligently failing to keep his client's funds separate from his own.[6] The board concluded that Sather's failure to adhere to this rule was negligent because a case addressing the issue was announced in close proximity to Sather's actions, and the board believed that Sather could have been unaware of the requirements for handling client funds. *See People v. Gilbert,* 921 P.2d 48, 49 (Colo.1996). Thus, the hearing board reasoned that Sather's failure to hold the $20,000 paid by Perez as separate from Sather's personal property resulted from a "negligent lack of attention to the case law," but there was not clear and convincing evidence showing that Sather knew or should have known that his conduct violated 1.15(a)'s requirement that client funds be segregated from the attorney's own funds.

The board concluded that the complaint did not allege that Sather's original fee of $20,000 was excessive or that the portion of the fee Sather claimed he earned, $6,923.64, was excessive in violation of Colo. RPC 1.5(a).[7] Thus, the board did not consider whether Sather's fees violated Colo. RPC 1.5(a).

Sather was admitted to practice law in this state in 1976.[8] He received a letter of admonition in 1983 for his failure to give an accounting of time spent and funds received in two cases. In 1996, Sather received a letter of admonition for failure to pay promptly a person he hired for investigative services. In 1997, Sather was suspended from the practice of law for thirty days for violations of Colo. RPC 1.4 and 1.5 based on his failure to keep a client reasonably informed about a matter and for charging unreasonable fees. *See Sather,* 936 P.2d at 579. In 1993, Sather began experiencing personal problems due to the dissolution of his marriage, and he filed for bankruptcy in 1995. *See id.* at 578.

We note that this case arose under our previous attorney disciplinary system, which is no longer in place. *See* note 2, *supra.*

Because we recognized the importance of this issue to the Colorado bar, we determined not to rely solely on the briefs filed in this court. We set this case for oral argument and directed the parties to brief the following questions:

1. Whether under the facts of this case a violation of Colo. RPC 1.15(a) has been established.

2. Whether under the facts of this case a violation of Colo. RPC 1.16(d) has been established.

3. Whether under the facts of this case a violation of Colo. RPC 8.4(c) has been established.

In addition to setting this case for oral argument, we invited representatives of state professional organizations to submit amicus briefs on these issues. The Colorado Criminal Defense Bar and the Colorado Defense Lawyers Association submitted briefs as amici curiae.

## III. DISCUSSION

Sather contends that under Colorado law it is unclear whether an attorney must deposit all advance fees—including flat fees—into a trust account until the fees are earned. Sather further argues that an attorney earns flat fees upon receipt and the fees are thus the attorney's property and not subject to the trust requirements of Colo. RPC 1.15. Sather's fee agreement also raises the issue of "non-refundable" fees.

In order to address the issues raised in this case, we examine first Colo. RPC 1.15's requirement that attorneys segregate their property and funds from their clients'. Second, we discuss when and under what circumstances a client's property or funds are earned by an attorney and may therefore be treated as the attorney's property. Thirdly, we address whether an attorney may charge a "non-refundable" fee.

---

6. Colo. RPC 1.15(a) requires an attorney to keep client property separate from the attorney's own property and to place client funds in trust accounts separate from the attorney's accounts.

7. Colo. RPC 1.5(a) forbids attorneys from charging unreasonable fees.

8. In response to Sather's motion in a separate disability proceeding, the Presiding Disciplinary Judge ordered Sather's license transferred to disability inactive status as of February 23, 2000.

## A. Colo. RPC 1.15 Requires Segregation of Attorney and Client Property

■ Initially, we address Colo. RPC 1.15(a), which requires that an attorney keep client funds separate from the attorney's own property:

In connection with representation, an attorney *shall hold property of clients or third persons that is in an attorney's possession separate from the attorney's own property. Funds shall be kept in a separate account* maintained in the state where the attorney's office is situated, or elsewhere with the consent of the client or third person.... Complete records of such account funds and other property shall be kept by the attorney and shall be preserved for a period of seven years after termination of representation.

(Emphasis added.) In addition to this subsection of the rule, Colo. RPC 1.15(f)(1)[9] requires that an attorney maintain client funds submitted to the attorney as advance fees in a separate trust account until the attorney earns the fees:

(f) Every attorney in private practice in this state shall maintain in a financial institution doing business in Colorado, in the attorney's own name, or in the name of a partnership of attorneys, or in the name of the professional corporation or limited liability corporation of which the attorney is a member, or in the name of the attorney or entity by whom employed:

(1) A trust account or accounts, separate from any business and personal accounts that the attorney may maintain as an executor, guardian, trustee, or receiver, or in any other fiduciary capacity, into which trust account or accounts ... *any advance payment of fees that has not been earned shall be deposited ....*

(Emphasis added.) Thus, Colo. RPC 1.15(a) and (f) indicate that an attorney has an obligation to keep clients' funds separate from his own, and that advance fees remain the property of the client until such time as the fees are "earned." *See also People v. Varallo,* 913 P.2d 1, 11–12 (Colo.1996) (disciplining

attorney for failing to place unearned retainers in a separate account for the client); *People v. Brown,* 863 P.2d 288, 290 (Colo. 1993) (finding violation in part where "respondent accepted a retainer from the client [and] deposited the retainer in the law firm's operating account although the retainer had not yet been earned").

■ The rule requiring that an attorney segregate funds advanced by the client from the attorney's own funds serves important interests. As a fiduciary to the client, one of an attorney's primary responsibilities is to safeguard the interests and property of the client over which the attorney has control. *See Olsen & Brown v. City of Englewood,* 889 P.2d 673, 675 (Colo.1995); Restatement (Third) of the Law Governing Lawyers § 56 cmt. (b) (Proposed Final Draft No. 1 1996) [hereinafter Draft Restatement]. Requiring the attorney to segregate all client funds—including advance fees—from the attorney's own accounts unless and until the funds become the attorney's property protects the client's property from the attorney's creditors and from misuse by the attorney. *See Gilbert,* 921 P.2d at 49–50; *People v. Shidler,* 901 P.2d 477, 479 (Colo.1995); *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Apland,* 577 N.W.2d 50, 56 (Iowa 1998); Model Rules of Professional Conduct Rule 1.15 commentary at 237 (3d ed.1996) [hereinafter Model Rules]. Thus, Colo. RPC 1.15(a) and (f) further the attorney's fiduciary obligation to protect client property.

■ In addition to protecting client property, requiring an attorney to keep advance fees in trust until they are earned protects the client's right to discharge an attorney. *See* Colo. RPC 1.16(d) cmt. ("A client has a right to discharge an attorney at any time, with or without cause, subject to liability for payment for the lawyer's services."). Upon discharge, the attorney must return all unearned fees in a timely manner, even though the attorney may be entitled to quantum meruit recovery for the services that the attorney rendered and for costs incurred on

9. We note that Colo. RPC 1.15(f)(1) became effective July 1, 1999, after Sather's conduct in this case. However, we include Colo. RPC 1.15(f)(1) in our discussion because it helps clarify the current state of the rules.

behalf of the client. *See* Colo. RPC 1.16(d); *People v. Crews*, 901 P.2d 472, 474–75 (Colo. 1995); *Olsen & Brown*, 889 P.2d at 677.

If an attorney suggests to a client that any pre-paid or advance funds are "non-refundable" or constitute the attorney's property regardless of how much or how little work the attorney performs for the client, then the client may fear loss of the funds and may refrain from exercising his right to discharge the attorney. *See Olsen & Brown*, 889 P.2d at 677; *In re Cooperman*, 187 A.D.2d 56, 591 N.Y.S.2d 855, 858 (1993), *aff'd*, 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994). Because the unearned portion of the advance fees must be kept in trust and cannot be treated as the attorney's property until earned, the client will not risk forfeiting fees for work to be performed in the future if the client chooses to discharge his attorney. Thus, the requirement that the attorney place advance fees in trust protects the client's right to discharge his attorney.

B. An Attorney Earns Fees by Conferring a Benefit on or Providing a Service for the Client

As we discussed, rule 1.15's requirement that an attorney hold in trust all unearned fees furthers important interests central to the attorney-client relationship. When a client pays an attorney before the attorney provides legal services, the crucial issue becomes whether funds are "earned on receipt" and may be treated as the attorney's property, or whether the fees are unearned, in which case the funds must be segregated in a trust account under Colo. RPC 1.15. As one publication aptly framed this dilemma:

> The basic question is, Whose money is it? If it's the client's money in whole or in part, it is subject to the trust account requirements. If it is the lawyer's money, placing it into a trust account would violate the anti-commingling rule.

ABA/BNA *Lawyers' Manual on Professional Conduct* 45:109 (1993) [hereinafter ABA/BNA *Lawyers' Manual*]. We hold that an attorney earns fees only by conferring a benefit on or performing a legal service for the client. Unless the attorney provides some benefit or service in exchange for the fee, the attorney has not earned any fees and, with a possible exception in very limited circumstances, the attorney cannot treat advance fees as her property.

Funds given by clients to attorneys as advance fees or retainers benefit attorneys and clients. Some forms of advance fees or retainers appropriately compensate an attorney when the fee is paid because the attorney makes commitments to the client that benefit the client immediately. Such an arrangement is termed a "general retainer" or "engagement retainer," and these retainers typically compensate an attorney for agreeing to take a case, which requires the attorney to commit his time to the client's case and causes the attorney to forego other potential employment opportunities as a result of time commitments or conflicts. *See In re Scimeca*, 265 Kan. 742, 962 P.2d 1080, 1091–92 (1998); *In re Lochow*, 469 N.W.2d 91, 98 (Minn.1991); ABA/BNA *Lawyers' Manual, supra*, 45:110–11; Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers Revisited*, 72 N.C. L.Rev. 1, 6 (1993). Although an attorney usually earns an engagement retainer by agreeing to take the client's case, an attorney can also earn a fee charged as an engagement retainer by placing the client's work at the top of the attorney's priority list. Or the client may pay an engagement retainer merely to prevent the attorney from being available to represent an opposing party. *See* Alec Rothrock, *The Forgotten Flat Fee: Whose Money Is It and Where Should It Be Deposited?*, 1 Fla. Coastal L.J. 293, 357 (1999). In all of these instances, the attorney is providing some benefit to the client in exchange for the engagement retainer fee.

In contrast to engagement retainers, a client may advance funds—often referred to as "advance fees," "special retainers," "lump sum fees," or "flat fees"—to pay for specified legal services to be performed by the attorney and to cover future costs. *See Scimeca*, 962 P.2d at 1091; *Lochow*, 469 N.W.2d at 98; Model Rules, *supra*, Rule 1.5, commentary at 59; ABA/BNA *Lawyers' Manual, supra*, at 45:111. We note that unless the fee agreement expressly states that a fee is an engagement retainer and

explains how the fee is earned upon receipt, we will presume that any advance fee is a deposit from which an attorney will be paid for specified legal services. *See* Draft Restatement, *supra*, § 50 cmt. (g) ("A fee payment that does not cover services already rendered and that is not otherwise identified is presumed to be a deposit against future services.").

 Advance fees present an attractive option for both the client and the attorney. Like engagement retainers, advance fees allow clients to secure their choice of counsel. Additionally, some forms of advance fees, e.g., "lump sums" or "flat fees," benefit the client by establishing before representation the maximum amount of fees that the client must pay. *See* Rothrock, *supra*, at 354. In these instances, the client knows how much the total cost for legal fees will be in advance, permitting the client to budget based on a fixed sum rather than face potentially escalating hourly fees that may exceed the client's ability to pay. *See id.* So long as the fees are reasonable, such arrangements do not violate ethical rules governing attorney fees. *See* Colo. RPC 1.5 cmt. (endorsing the use of a "fixed amount" as the basis for a fee); Draft Restatement, *supra*, § 50 cmt.(g) (referring to "lump-sum" fees as complete payment for an attorney's services).

Advance fees benefit the attorney because the attorney can secure payment for future legal services, eliminating the risk of nonpayment after the attorney does the work. *See* Rothrock, *supra*, at 354. Often, attorneys collect a certain amount from the client in advance of any work and deduct from that amount according to the hours worked or mutually agreed-upon "milestones" reached during representation (e.g., investigation,

pretrial work and motions, negotiations, filings, handling a company's initial public offering, etc.). *See id.* at 355–56; Ariz. Ethics Op. 99–02 (1999). Attorneys often deduct costs from advance payments as they incur the costs, similar to the manner in which they deduct their fees as they are earned. Advance fees represent an alternative method of obtaining legal assistance that accommodates legitimate needs of both clients and attorneys, and by this opinion we do not intend to discourage these fee arrangements provided the fee agreements comply with the ethical principles discussed in this case.

 In the case of both advance fees and engagement retainers, the attorney performs a service or provides a benefit to the client in exchange for the fee. We recognize that we have not previously explained the ethical principle that determines when an attorney may treat funds paid as engagement retainers or advance fees as property of the attorney. Because this principle is a crucial element of the attorney-client relationship, we make our interpretation of the underlying ethical principle explicit: an attorney earns a fee only when the attorney provides a benefit or service to the client. *See Gilbert*, 921 P.2d at 49 (finding violation of Colo. RPC where attorney "performed no services to earn the fees"); *Apland* 577 N.W.2d at 57 ("[A] lawyer cannot charge a fee for doing nothing") (quoting Brickman & Cunningham, *supra*, 72 N.C. L.Rev. at 17).[10] Under Colo. RPC 1.15(a) and (f), all client funds—including engagement retainers, advance fees, flat fees, lump sum fees, etc.—must be held in trust until there is a basis on which to conclude that the attorney "earned" the fee; otherwise, the funds must remain in the client's

---

10. *See also* Ariz. Ethics Op. 99–02 ("[A] flat fee paid in advance presumptively remains the property of the client until the lawyer has completed the contracted-for services."); *Lochow*, 469 N.W.2d at 98 ("[A]ttorney fees for payment of services to be performed in the future must be placed in a trust account and removed only by giving the client notice in writing of the time, amount, and purpose of the withdrawal, together with a complete accounting thereof."); Tenn. Ethics Op. 92–F–128 (1992) ("All unearned attorney fees of any kind or nature paid by or on behalf of a client to an attorney, including retain-

er fees, advance fees, general retainers, special retainers, flat fees, pre-paid fees, etc.; including advanced costs and expenses; are funds which belong in part to the client and must be deposited in a trust account to be withdrawn only when due...."); Utah Ethics Op. 118 (1992) ("When there is no special written retainer agreement between lawyer and client, the lawyer must hold all client funds in the trust account until the client has been provided with an accounting of how the funds have been incurred for costs or earned as fees.").

trust account because they are not the attorney's property.

With respect to fees mutually agreed to be "earned on receipt," an attorney must describe in writing the nature of the benefit being provided to a specific client in order to claim some portion or all of an engagement retainer as earned when paid. *Cf.* Colo. RPC 1.5(b), cmt. (as amended, effective July 1, 2000) (requiring that all new fee agreements—and recommending that any changes in existing fee agreements—be explained to clients in writing). That is, an attorney cannot treat a fee as "earned" simply by labeling the fee "earned on receipt" or referring to the fee as an "engagement retainer." *See Wong v. Michael Kennedy, P.C.,* 853 F.Supp. 73, 81 (E.D.N.Y.1994). Rather, the attorney must explain in detail the nature of the benefit being conferred on the client, whether it is the attorney's guarantee of availability, prioritization of the client's work, or some other appropriate consideration. *See id.; Lochow,* 469 N.W.2d at 98.

Our holding that an attorney must keep advance fees in a separate trust account until the attorney performs legal services or otherwise confers a benefit on the client is consistent with our earlier cases. In *Gilbert,* we held that the respondent violated Colo. RPC 1.15(a) by failing to place $62 in filing fees and $600 in advance fees into a trust account. *See* 921 P.2d at 49. In *People v. Zimmermann,* we noted that the respondent's failure to deposit unearned advance fees, charged as "flat fees" by the attorney,

violated DR 1–102(A)'s requirement that unearned retainers be placed in trust accounts. *See* 922 P.2d 325, 325–26 (Colo.1996). In *Varallo* we noted, "Depositing unearned retainers into [a] business operating account" violates the rule requiring that client funds be deposited into a trust account. *See* 913 P.2d at 11. In *Brown,* we disbarred the respondent in part because he placed retainer fees in an operating account before the fees were earned. *See* 863 P.2d at 290–91.[11]

In sum, Colo. RPC 1.15 requires that attorneys segregate client funds, including those paid as advance fees, from the attorney's property. Engagement retainers are generally earned upon receipt and, so long as the basis of how the attorney earns this fee is clearly explained to the client in writing, they are the attorney's property. For other forms of advance fees, the attorney may transfer the funds to the attorney's personal or operating accounts only after earning the fees unless, within a very limited set of circumstances, the attorney and client have agreed in writing to allow the attorney to treat the unearned fees as property of the attorney.[12] An attorney can earn fees only by providing services or conferring a benefit on the client, and the attorney must explain the nature of the services or benefit being conferred before he may treat advance funds as his own property.

### C. "Non-refundable" Fees

Having discussed the ethical principle requiring that attorneys maintain in trust all advance fees until the attorney earns the

---

**11.** Although our holding today is consistent with our earlier cases and the majority of jurisdictions in the country, we recognize that our earlier cases have not made clear the requirement that an attorney must provide some benefit or service in order to earn a fee and that all unearned fees remain property of the client and must be kept in trust for the client. In addition, Colo. RPC 1.15(f), which requires that all unearned advance fees be placed in a trust account until earned, represents a recent addition to our rules of professional conduct. We also recognize that, in practice, many Colorado attorneys treat "flat fees," "minimum fees," "lump sum fees," and "non-refundable retainers" as property of the attorney upon receipt. For example, Forrest W. Lewis—an expert in criminal law practice called by Sather and a past-president of the Colorado

Criminal Defense Bar (CCDB)—testified that the members of the CCDB were closely divided about whether "flat fees" must be placed in trust or in the attorney's operating account. In its amicus brief, the CCDB stated that its members were nearly evenly divided in their opinions about how to handle flat fees.

Thus, we are aware that many attorneys believe that they are adhering to the rules of professional conduct when they treat flat fees and other forms of advance fees as their own property, and we acknowledge that our holding today forecloses this widely-used practice. For these reasons, we make our holding prospective.

**12.** *See* discussion in sections III.C and III.D, *infra.*

fees, we address Sather's characterization of his fee as "non-refundable." Because fees are always subject to refund under certain conditions, labeling a fee "non-refundable" misleads the client and may deter a client from exercising their rights to refunds of unearned fees under Colo. 1.16(d). Thus, we hold that attorneys cannot enter into "non-refundable" retainer or fee agreements. As is the case with our holding that attorneys must place all unearned funds in trust until the attorney confers a benefit on or performs a service for the client, we have not previously made this prohibition explicit.[13]

Some forms of advance fees called "non-refundable" fees are often treated by attorneys as earned on receipt and thus as the attorney's property. In these agreements, attorneys inform their clients that the non-refundable fee becomes earned on receipt and is the attorney's property irrespective of whether the attorney performs future legal services and regardless of the time the attorney devotes to the client's case. *See, e.g., Cooperman,* 611 N.Y.S.2d 465, 633 N.E.2d at 1070. These arrangements are controversial because attorneys treat funds as their own property before performing any legal services for the client:

> In the forefront of the debate on advance fee payments is the problem of the "non-refundable" retainer. A non-refundable retainer "allow[s] an attorney to keep an advance payment irrespective of whether the contemplated services are rendered." While widely used, this kind of arrangement is not immune to criticism.

ABA/BNA *Lawyers' Manual* at 45:110 (citations omitted); *see also* Model Rules, *supra,* Rule 1.5 commentary at 59.

▬ A fee labeled "non-refundable" misinforms the client about the nature of the fee and interferes with the client's basic rights in the attorney-client relationship. Attorney fees are always subject to refund if they are excessive or unearned. *See* Colo. RPC 1.5(a); 1.16(d); Rothrock, *supra,* at 347. A fee agreement that suggests that advance fees are "non-refundable" undermines the client's understanding of her rights and may discourage a client from seeking refunds to

which the client may be entitled. *See* Rothrock, *supra,* at 347.

In addition to misinforming the client, "non-refundable fees" may discourage the client from discharging his attorney for fear that the client will not be able to recover advance fees for which the attorney has yet to perform any work. *See Cooperman,* 611 N.Y.S.2d 465, 633 N.E.2d at 1072–73. Because the label is inaccurate and misleading, and discourages a client from exercising the right to discharge an attorney, we hold that attorneys may not enter into "non-refundable fee" agreements or otherwise communicate to their clients that the fees are "non-refundable."

▬ We acknowledge that in some instances a client may agree with an attorney to allow the attorney to treat funds paid in advance of legal services or other consideration as property of the attorney and thus not subject to the trust account requirements. Although we do not address the exact contours of such an arrangement in this opinion and recognize that narrow exceptions to this rule may exist, we caution that at minimum such arrangements will be construed against the attorney and in favor of the client. *See Elliott v. Joyce,* 889 P.2d 43, 46 (Colo.1994). Furthermore, the attorney must expressly communicate to the client verbally and in writing that the attorney will treat the advance fee as the attorney's property upon receipt; that the client must understand the attorney can keep the fee only by providing a benefit or providing a service for which the client has contracted; that the fee agreement must spell out the terms of the benefit to be conferred upon the client; and that the client must be aware of the attorney's obligation to refund any amount of advance funds to the extent they are unreasonable or unearned if the representation is terminated by the client. Further, any arrangement that allows the attorney to treat unearned advance fees as his own property must protect the client's property interests in the funds and the client's right to discharge the attorney at any time without being penalized by "non-refundable" fees or retainers.

---

**13.** *See People v. Paulson,* 930 P.2d 582, 583 n. 1 (Colo.1997).

In the limited circumstances in which an attorney earns fees before performing any legal services (i.e., engagement retainers) or where an attorney and client agree that the attorney can treat advance fees as the attorney's property before the attorney earns the fees by supplying a benefit or performing a service, the fee agreement must clearly explain the basis for this arrangement and explain how the client's rights are protected by the arrangement. In either of these situations, however, an attorney's fees are always subject to refund if excessive or unearned, and an attorney cannot communicate otherwise to a client.

### D. Rulemaking

We have discussed at length three important principles of professional responsibility. First, we reviewed Colo. RPC 1.15's requirement that attorneys segregate client funds and property from their own. This requirement protects client property from attorneys' creditors and from abuse by the attorneys themselves. Second, we explained that an attorney may treat advance funds or other property submitted by the client in exchange for legal services or other benefits only when the attorney performs those services or confers the benefits. We agree with the Iowa Supreme Court that an attorney cannot earn a fee for doing nothing. *See Apland,* 577 N.W.2d at 57. Third, we stated that attorneys cannot characterize fees as "non-refundable" because an attorney's fees are always subject to refund if they are excessive or unearned and such a characterization misinforms a client and may discourage a client from seeking refunds to which he is entitled.

In addition to our overview of these important subjects, we examined two related areas in some detail. First, we reviewed how and when an attorney earns a fee upon receipt, as in the case of engagement retainers. Such fees are earned only when the attorney performs a service or provides an immediate benefit to the client. Second, we noted that

in some limited circumstances, a client and her attorney may agree that the attorney may treat advance fees as her own property before performing the services paid for by the client. As we emphasized, attorneys in such arrangements must take particular care to protect the client's rights to discharge the attorney and to recoup unearned fees.

However, we also recognize that a substantial number of attorneys in this state may engage in conduct that would be affected by our discussion of these issues. For example, many attorneys collect flat fees in advance of performing work and place the fees in their operating accounts upon receipt. Because we acknowledge that our opinion concerning the proper disposition of such a fee has widespread practical implications and because we wish to provide practicing attorneys a full opportunity both to comment on any proposed rules and also to comport their practices to these ethical constraints, we are referring these issues to the Colorado Bar Association.[14] We will request that the CBA solicit widespread comment from practicing attorneys and then draft proposed Rules that would implement the ethical principles that we today announce.

Until the court formally accepts and promulgates such Rules, we will not discipline attorneys for failing to place "flat fees" or similarly characterized fees into trust accounts until the attorney earns the fee, in violation of Colo. RPC 1.15(a). On the other hand, we will discipline attorneys who charge excessive fees, attorneys who fail to return unearned fees promptly and attorneys who characterize fees as non-refundable because attorney fees are always subject to refund if either excessive or unearned.

### IV. DISCIPLINE OF ATTORNEY–RESPONDENT SATHER

■ Having examined the ethical principles applicable to this case, we address the board's recommendation that Sather be sus-

---

14. This court does not have a standing committee devoted to the rules of professional conduct as we do for Rules of Criminal Procedure or Rules of Civil Procedure. Thus, we refer the process of soliciting comment and developing proposed rules to implement the ethical mandates contained in this opinion to the Colorado Bar Association. It is our expectation that the CBA will in turn refer the matter to the Ethics Committee of that organization: an active, broad-based committee experienced in professional responsibility issues.

pended for a year and a day. Because we have not previously made clear an attorney's obligation to deposit all forms of advance fees into trust accounts or explained the prohibition against "non-refundable" fees, we do not sanction Sather for violating these rules. For this reason, we do not accept the board's recommended sanction. Additionally, we assess the aggravating and mitigating circumstances of this case somewhat differently than did the board. Because Sather knowingly failed to return unearned fees and knowingly misrepresented the nature of the fees paid by a client, and in light of his disciplinary history, we hold that Sather be suspended for six months.

The hearing board concluded that Sather "negligently" violated Colo. RPC 1.15(a) by failing to keep client funds segregated from his own funds when he deposited the flat fee from Perez in his operating account before he earned the fees. As discussed, we acknowledge that our opinions have not made clear the requirement that under Colo. RPC 1.15 an attorney cannot treat as earned any advance fees for which the attorney has not provided a benefit or service to the client. We also note that Colo. RPC 1.15(f)—which requires that advance fees be kept in a client's trust account until the fees are earned and guides our interpretation of an attorney's responsibilities to safeguard client property under Colo. RPC 1.15—was not in effect at the time of Sather's conduct. Thus, although Sather violated this rule, we disagree with the board and we do not discipline Sather for this violation.

Although we disagree with the board's conclusion that Sather's conduct warrants sanctions under Colo. RPC 1.15, we agree with the board's conclusion that Sather violated Colo. RPC 1.16(d) by only partially repaying Perez's advance fee three months after being discharged and paying the balance of the refund five months after being discharged. Once discharged from representing a client, an attorney "shall take steps to the extent reasonably practicable to protect the client's interests, such as ... refunding any advance payment of fee that has not been earned." Colo. RPC 1.16(d). A discharged attorney must refund unearned fees

in a timely fashion and failure to do so is a violation of Colo. RPC 1.16(d). *See Crews,* 901 P.2d at 474–75; *People v. Sigley,* 917 P.2d 1253, 1254 (Colo.1996) (finding violation of Colo. RPC 1.16(d) where respondent failed to return advance fees for seven months after discharge). Upon discharge, Sather acknowledged his obligation to return the unearned portion of the $20,000 to Perez, and Sather eventually returned the entire unearned amount of $13,076.36. Perez claimed that he was unable to retain alternate counsel because he did not have access to those funds after he discharged Sather, and the board concluded that his inability to use those funds caused harm to Perez. Because Sather only partially returned the unearned fees three months after being discharged and did not return the remainder of the unearned fees until five months after being discharged, we agree with the board that his conduct violated Colo. RPC 1.16(d).

We also agree with the board's determination that Sather violated Colo. 8.4(c) by materially misrepresenting to Perez the nature of the fee he paid. Colo. RPC 8.4(c) prohibits attorneys from engaging in conduct that involves "dishonesty, fraud, deceit, or misrepresentation." The fee agreement Sather drafted clearly expressed that the $20,000 was non-refundable, irrespective of the number of hours Sather spent on the case, and that **"IN ALL EVENTS, NO REFUND SHALL BE MADE OF ANY PORTION"** of the $20,000. (Emphasis in original.) Despite this strong language of the contract he drafted, Sather testified that he understood his ethical obligation to return any unearned portion of the fees in the event of discharge. We approve of the board's finding that Sather knowingly used misleading language to describe the fee arrangement and knowingly made a material misrepresentation to his client concerning the $20,000 advance fee. Thus, we accept the board's finding that Sather's conduct involved dishonesty, deceit, fraud and misrepresentation in violation of Colo. RPC 8.4(c).

Sather's conduct warrants suspension under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) [hereinafter ABA *Standards* ]. In the absence of

mitigating or aggravating factors, an attorney's conduct generally warrants suspension when the attorney knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. *See id.* at 4.12. Sather knew he was handling his client's property improperly when Sather failed to return promptly the unearned portion of Perez's advance fee. Sather's failure to refund the fees in a timely manner caused potential injury to Perez by subjecting the funds to claims from Sather's creditors. *See Shidler,* 901 P.2d at 479. Thus, Sather knowingly mishandled client funds and caused his client actual and potential harm, and his conduct therefore warrants suspension.

Sather's conduct also warrants suspension because he knowingly deceived a client and caused serious injury or potential serious injury to the client. *See* ABA *Standards, supra,* at 4.62. By his own admission Sather knew that, despite the fee agreement's boldface and repeated language to the contrary, he misrepresented the nature of the advance fee to Perez as "non-refundable" because fees are always subject to refund in the event they are unreasonable or unearned. *See* Colo. RPC 1.5(a); 1.16(d). Because Sather's conduct involved dishonesty, deceit, fraud and misrepresentation, it warrants suspension. *See also Sigley,* 917 P.2d at 1256.

As aggravating factors, the board considered Sather's prior disciplinary record, his selfish motive, the pattern of misconduct demonstrated, Sather's substantial experience in the practice of law, and his indifference to Perez's needs with respect to refunding the unearned advance fees. *See* ABA *Standards, supra,* at 9.22(a), (b), (c), (i), (j). Sather's prior disciplinary record contains incidents involving improper and "deceitful" fee practices. *See Sather,* 936 P.2d at 578–79. In addition, we note that Sather knowingly accepted a flat fee in a civil rights case without informing his client that he had filed for bankruptcy, which constitutes further evidence of a selfish motive. Sather has been an attorney in this state for over twenty years and has substantial experience in the practice of law. Thus, we agree with the board that Sather's prior disciplinary record,

the pattern of misconduct demonstrated in the case, Sather's selfish motive, and his substantial experience in law are aggravating factors.

We disagree with the board, however, that Sather showed indifference to returning the unearned portion of the advance fee to Perez, and we do not consider this an aggravating factor. Sather acknowledged his obligation to refund the unearned fees to Perez, but failed to return the funds in a timely manner. This conduct, without more, does not constitute "indifference" towards his obligation to return the unearned fees, and we will not consider the acknowledgement of an ethical duty as justification for a harsher sanction. On the other hand, Sather was required to return the unearned fees and his acknowledgment of this duty does not justify a reduction in the sanctions to be imposed. Additionally, we want to encourage attorneys to acknowledge their duty to return unearned fees in the event they are discharged and we want attorneys to make efforts to return unearned fees even if the refund is untimely. Thus, we do not accept the board's conclusion that Sather was "indifferent" with respect to repaying Perez and we hold that Sather's acknowledgment of his obligation to repay Perez is neither an aggravating nor a mitigating circumstance.

As mitigating factors, the board considered that Sather experienced personal problems during the time period when the unethical conduct occurred and that Sather cooperated with the regulation counsel. *See* ABA *Standards, supra,* at 9.32(c), (e). We agree with the board that these circumstances should be considered as mitigating factors.

Sather's conduct warrants suspension, which the ABA *Standards* suggests should not be for less than six months. *See* ABA *Standards, supra,* at 2.3. The board's recommendation of one year and a day may have been appropriate had we determined that, in addition to failing to return promptly unearned fees and making misrepresentations to his client, Sather should be sanctioned for violating Colo. RPC 1.15. *See Zimmermann,* 922 P.2d at 329–30 (imposing a one year and one day suspension where attorney recklessly mishandled client funds).

However, because we do not discipline Sather for knowingly failing to place client funds into a trust account, we will impose a lesser sanction for his failure to return unearned fees and for knowingly making misrepresentations to a client. *See Sigley*, 917 P.2d at 1256 (imposing a thirty-day suspension where attorney failed to return unearned fees for seven months, had a conflict of interest with client, and knowingly deceived a client). Because Sather's disciplinary record reflects a history of inappropriate conduct with regard to fees, Sather should demonstrate his fitness to practice before being reinstated. *See Zimmermann*, 922 P.2d at 330 (requiring that attorney undergo reinstatement proceedings in order to protect public from recurring misconduct).

## V. ORDER

It is hereby ordered that Larry D. Sather be suspended from the practice of law for six months. Because Sather's license has already been transferred to disability status, his suspension will begin immediately on the date we issue this opinion. We also order that Sather undergo reinstatement proceedings as set forth in C.R.C.P. 251.29 even though this section normally applies to suspensions of longer than one year. This requirement is in addition to the proceedings Sather must undergo to be reinstated from disability status. *See* C.R.C.P. 251.30. We further order that, before petitioning for reinstatement, Sather pay the costs of this proceeding in the amount of $1,281.48 to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202.