The PEOPLE of the State of
Colorado, Complainant,

v.

William A. McGRATH, Respondent.

No. 89SA247.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Linda Donnelly, Disciplinary Counsel, and Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

William A. McGrath, Denver, pro se.

Chief Justice QUINN delivered the Opinion of the Court.

In this disciplinary proceeding, a complaint was filed with the Grievance Committee charging the respondent, William A. McGrath, with unprofessional conduct in connection with his handling of client funds. Subsequent to the filing of the complaint, the respondent and the Assistant Disciplinary Counsel entered into a written stipulation of fact and a consent to a one-year and one-day suspension, conditioned upon the approval of this court. An inquiry panel of the Grievance Committee approved the stipulation and sanction, and we do also.

The respondent was admitted to the practice of law in the State of Colorado on September 27, 1972, and is subject to the jurisdiction of this court and its Grievance Committee. In April 1986 Francis N. De-Maria retained the respondent to represent him in a collection and eviction action against Matthew Tocco. On June 2, 1986, a default judgment was entered in favor of DeMaria and against Tocco in the amount of $1,676.80. After obtaining $234.00 from Tocco by garnishment, the respondent charged DeMaria $506.30 for fees and costs and applied the $234.00 garnished from Tocco to DeMaria's bill.

Tocco thereafter left his employment, thus terminating the writ of garnishment, but in March 1987 the respondent served a writ of continuing garnishment on Tocco's new employer. Between May and August 1987, the respondent received six checks for garnished funds totalling $1,358.24. Sometime prior to November 4, 1987, the

respondent informed his client that he was receiving garnished checks, but did not provide DeMaria with a specific accounting of the funds received. The respondent deposited some of the garnished funds in his business account, rather than his trust account, and used at least $300 of the garnished funds for his own purposes.

DeMaria made several attempts to contact the respondent by phone concerning the funds, but the respondent failed to return DeMaria's phone calls. On or about November 4, 1987, DeMaria sent a certified letter to the respondent in which he requested an accounting of the garnished funds within two weeks. The respondent failed to contact DeMaria until December 31, 1987, when the respondent wrote DeMaria a letter in which he represented that the garnished funds had been deposited in his trust account and that he would review his file and provide an accounting within two weeks. The respondent, however, failed to provide the accounting, and DeMaria filed a request for investigation with the Grievance Committee on January 28, 1988.

On approximately March 24, 1988, the respondent sent DeMaria a check drawn on the respondent's trust account in the amount of $513.49, which represented garnished funds less attorney fees. The check, however, was returned to DeMaria due to insufficient funds. The respondent requested DeMaria to deposit the check a second time, and, upon redeposit, the check cleared after the respondent had deposited personal funds into his trust account.

The respondent, in his answer to the Grievance Committee, stated that six checks for garnished funds totalling $1,358.24 had been deposited in his trust account. This statement, which was identical to the respondent's representation to DeMaria in the letter of December 31, 1987, was false. The respondent's bank records indicate that he deposited three of the checks totalling $896.39 into his business account in May and June 1987, and he deposited an additional check for $131.27 in his trust account in August 1987. The respondent's bank records fail to disclose any deposits of the remaining two checks totalling $461.85. According to the respondent's own records, by August 1987, he had received approximately $300 of garnished funds in excess of attorney fees, which attorney fees he had been billing at the rate of $125 per hour. These excess funds were not preserved by the respondent in either his business account or his trust account. Moreover, the balance in the respondent's business account and trust account fell below $300, and, as noted in the stipulation, it appears that the respondent converted funds belonging to his client.

The respondent and the Deputy Disciplinary Counsel stipulated that the respondent's conduct in this matter violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 6–101(A)(3) (neglect of a legal matter entrusted to a lawyer), DR 9–102(A) (duty of lawyer to deposit client's funds in identifiable bank accounts and, except as expressly authorized by rule, no funds belonging to lawyer or law firm shall be deposited in such account), and DR 9–102(B)(1) and (4) (duty of lawyer to promptly notify client of receipt of funds and pay or deliver such funds, as requested by client, which client is entitled to receive). In light of these stipulated facts, an inquiry panel of the Grievance Committee recommended, in keeping with the stipulation, that the respondent be suspended from the practice of law for one year and one day and be assessed the costs of the grievance proceeding in the amount of $50.74.

We approve the stipulation and the sanction of suspension. When, as here, a lawyer knows or should know that he is dealing improperly with a client's property and causes potential injury to the client, a suspension from the practice of law, at the very least, is an appropriate sanction. *ABA Standards for Imposing Lawyer Sanctions* § 4.12 (1986). Indeed, if there were not some lingering doubt about whether the respondent engaged in a *knowing* conversion of his client's funds, we would have no hesitation in entering an order of disbarment. *See ABA Standard* § 4.11. Commingling a client's funds with those of the lawyer is a serious violation of the Code of Professional Responsibility, even in the absence of an actual loss to the

client, because the act of commingling subjects the client's funds to the claims of the lawyer's creditors. *ABA Standard* § 4.12, commentary. In the instant case, the respondent's improper dealing with his client's funds was aggravated by his deceit and misrepresentation, as well as by his prolonged neglect of a legal matter entrusted to him, both of which provide additional support for the order of suspension. *See ABA Standard* § 9.2.

It is accordingly ordered that the respondent, William A. McGrath, be suspended from the practice of law for a period of one year and one day, effective thirty days after the date of this opinion. The respondent is ordered to comply with the provisions of C.R.C.P. 241.21 relating to the termination of all legal matters, the giving of notice to all clients and opposing counsel, and the maintenance of appropriate records as proof of compliance. The respondent is also ordered to pay the costs of these proceedings in the amount of $50.74 by tendering such sum to the Grievance Committee, 600 17th Street, 500–S Dominion Plaza, Denver, Colorado 80202, within thirty days of this date. Any application for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with the requirements of C.R.C.P. 241.22.