523 P.3d 1025
The PEOPLE of the State of Colorado
v.Brenda L. STOREY, #25828
Case Number: 20PDJ063
Office of Presiding Disciplinary Judge of the Supreme Court of Colorado.
NOVEMBER 10, 2022 OPINION AND DECISION ON REMAND IMPOSING SANCTIONS UNDER C.R.C.P. 251.19(b)1 Before a Hearing Board comprising citizen member Laurie Albright, lawyer Donald F. Cutler IV, and Presiding Disciplinary Judge Bryon M. Large ("the PDJ")2 is a mandate from the Colorado Supreme Court. That tribunal remanded this matter to the Hearing Board to determine the appropriate sanction for Brenda L. Storey ("Respondent"), who violated Colo. RPC 1.7(a)(2), Colo. RPC 1.15A(a), Colo. RPC 1.15A(c), and Colo. RPC 8.4(c) while representing a client in a marriage dissolution case.3 The Colorado Supreme Court concluded that Respondent did not knowingly disobey a court order to return funds her client had paid her, reversing only the Hearing Board's conclusion that Respondent violated Colo. RPC 3.4(c).4 On remand, a Hearing Board majority determines that Respondent's misconduct warrants a suspension of one year and one day.
I. PROCEDURAL HISTORY Respondent was admitted to practice law in Colorado in 1995 under attorney registration number 25828. She is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this disciplinary proceeding.5 On September 17, 2020, Justin P. Moore of the Office of Attorney Regulation Counsel ("the People") filed a complaint with the Office of the Presiding Disciplinary Judge, alleging that Respondent violated Colo. RPC 1.7(a)(2) ; Colo. RPC 1.15A(a) ; Colo. RPC 1.15A(c) ; Colo. RPC 3.4(c) ; and Colo. RPC 8.4(c). Lawyer Michael T. McConnell answered on Respondent's behalf.
On June 25, 2021, the Hearing Board issued an "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)," suspending Respondent for one year and one day. In that opinion, the Hearing Board concluded that Respondent violated five Rules of Professional Conduct relating to her representation of Cynthia Sullivan in a marriage dissolution proceeding. The Hearing Board found that during the dissolution proceeding Ms. Sullivan became unable to timely pay Respondent's legal bill and that Respondent prioritized her own interest in getting paid for her legal services over her client's interests in the case, thereby adversely affecting the representation in violation of Colo. RPC 1.7(a)(2). The Hearing Board determined that Respondent transgressed the rule in three respects. First, while threatening to withdraw from the case, Respondent pressured Ms. Sullivan to liquidate furniture and other marital assets to pay Respondent's bill without advising her client of the legal risks of selling the property during the proceeding. Second, Respondent accepted from Ms. Sullivan an IRS tax refund check ("the IRS check") for $47,578.43 as payment for Respondent's bill, but she did not counsel Ms. Sullivan about any potential consequences of using the IRS check to pay for legal fees. Nor, in order to ensure that Ms. Sullivan would not suffer any adverse tax implications, did Respondent investigate why the IRS issued the check. Third, after Respondent accepted the IRS check, she shirked her duty to advise Ms. Sullivan about the need to timely disclose the check to the opposing party, Caldwell Sullivan, effectively delaying the point at which Mr. Sullivan became aware of the check until Respondent had applied in two tranches all of the check's funds to her earned fees. And because Mr. Sullivan held an unresolved interest in the IRS check when Respondent authorized the transfers from her trust account to her operating account, the Hearing Board found that she violated Colo. RPC 1.15A(a) and Colo. RPC 1.15A(c).
The Hearing Board also determined that by avoiding her obligation to ensure that the IRS check was timely disclosed, Respondent effectively concealed the check's existence from the opposing party in violation of Colo. RPC 8.4(c). Relying on her client's initial instruction to tread carefully in disclosing the IRS check, Respondent avoided discussing the check during the parties’ settlement negotiations and at a court status conference where the parties discussed legal fees and costs. But the IRS check was material to those discussions, the Hearing Board found, as Respondent had already applied the majority of the check's funds to her earned fees and held the remaining funds in trust, and Respondent did not use those opportunities to revisit the topic of the IRS check's disclosure with her client. Instead, the Hearing Board concluded, Respondent directed her client not to communicate with the opposing party and deflected her client's request for advice regarding the IRS check: when Ms. Sullivan asked whether she should provide to Mr. Sullivan a letter from the IRS that would alert him to the check's existence, Respondent waited eight days before telling Ms. Sullivan, "Do whatever you want on this issue."6 The Hearing Board thus found that Respondent acted recklessly because she had deliberately closed her eyes to facts she had a duty to consider. The Hearing Board also deemed reckless Respondent's failure to investigate the IRS check before accepting it as payment for her bills. Had Respondent done so, she would have learned that the IRS check named both Mr. and Ms. Sullivan as payees. She also would have discovered that the IRS had misapplied an earlier payment from the Sullivans and erroneously issued the check as a refund, leaving the Sullivans with an unpaid tax liability.
Last, the Hearing Board determined that after Respondent withdrew as Ms. Sullivan's counsel, Respondent violated Colo. RPC 3.4(c) by knowingly disobeying a court order to return the funds from the IRS check to the Sullivans, who had attempted to claw back the funds from her.
The Hearing Board agreed that Respondent's misconduct warranted a suspension of one year and one day.
On July 15, 2021, Respondent moved to stay her suspension pending appeal. The People did not oppose a stay so long as Respondent complied with conditions, including practice monitoring, during the stay. Respondent filed a notice of appeal with the Colorado Supreme Court on July 16, 2021. The Hearing Board granted Respondent's motion for stay on July 21, 2021. Respondent's stay has remained in effect since that date.
On October 4, 2022, the Colorado Supreme Court issued an opinion affirming in part and reversing in part the Hearing Board's opinion. Specifically, that court agreed with the Hearing Board that Respondent violated Colo. RPC 1.7(a)(2), Colo. RPC 1.15A(a) and 1.15A(c), and Colo. RPC 8.4(c). The Supreme Court disagreed, however, that clear and convincing evidence showed that Respondent knowingly disobeyed a court order. The Colorado Supreme Court thus reversed the Hearing Board's determination that Respondent violated Colo. RPC 3.4(c) and remanded this case to us to determine the appropriate sanction in light of the partial reversal. The mandate issued on October 19, 2022.
II. SANCTIONS On remand, a majority of the Hearing Board determines the appropriate sanction in this matter,7 considering the relevant factual findings in our opinion and the Colorado Supreme Court's ruling affirming our determination that Respondent violated Colo. RPC 1.7(a)(2), Colo. RPC 1.15A(a) and 1.15A(c), and Colo. RPC 8.4(c). We are guided in this task by the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")8 and Colorado Supreme Court case law.9 When imposing a sanction after a finding of lawyer misconduct, a hearing board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0 – Duty, Mental State, and Injury
Duty: "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."10 But Respondent lost sight of these essential elements and breached her duty of loyalty when she advanced her own interests: first by encouraging Ms. Sullivan to sell marital assets and then by accepting the IRS refund check as payment for her fees without counseling Ms. Sullivan about the potential consequences of those actions. In addition, Respondent owed a duty of candor to Mr. Sullivan and to the court presiding over the Sullivan dissolution proceeding but violated that duty by concealing the IRS check. Through her dishonest conduct, Respondent also failed to meet the duty she owes the public to maintain her standards of personal integrity.
Mental State: We find that Respondent acted knowingly when she prioritized the payment of her fees above Ms. Sullivan's interests in violation of Colo. RPC 1.7(a)(2). As discussed above, we conclude that Respondent recklessly concealed the existence of the IRS check in violation of Colo. RPC 8.4(c). We do not find that Respondent acted knowingly because we saw no evidence that Ms. Sullivan directed Respondent to disclose the IRS check. We find that Respondent acted negligently when she authorized the first transfer of funds from the IRS check from her trust account to her operating account in violation of Colo. RPC 1.15A(a) and Colo. RPC 1.15A(c). Though Respondent knew at that time that the IRS check was a marital asset, we did not see clear and convincing evidence that she knew that the check was made out to both Ms. Sullivan and Mr. Sullivan and that it had not been disclosed to Mr. Sullivan. In contrast, we find that Respondent acted recklessly when she authorized the second transfer of funds from the IRS check, because she knew by that time that Mr. Sullivan had an interest in the check and that the check had not been disclosed. The evidence is not clear and convincing that Respondent knew she was not authorized to use the funds, however.
Injury: Ms. Sullivan testified that the litigation over the IRS check resulted in additional costs and reduced the sum that was ultimately allocated to her in the divorce, adding that Respondent's consumption of the IRS check funds and later refusal to return them prolonged the dissolution proceedings. Ms. Sullivan also stated that Respondent's use of the IRS check to pay her fees deepened the distrust between the Sullivans and negatively affected their children, who were aware of the tension between the parents. Jordan Fox, who represented Mr. Sullivan in the dissolution matter, testified that Respondent's handling of the IRS check damaged the Sullivans’ ability to effectively co-parent because the children could sense the distrust and conflict between their parents. He also noted that the financial impact on both parties was "tremendous," because the Sullivan case should have been resolved in six months but Respondent's actions prolonged it an additional eighteen months. Jennifer Alldredge, who represented Ms. Sullivan after Respondent withdrew from the case, estimated that each party paid over $50,000.00 in legal fees to force Respondent to return the funds from the IRS check. Alldredge testified that the way Respondent handled the IRS check eliminated any trust that remained between the Sullivans.
Respondent also harmed Mr. Sullivan by treating the funds from the IRS check as hers before advising her client to first disclose the check, effectively precluding Mr. Sullivan from investigating whether the check could be used to pay Respondent's fees. In addition, Fox testified that without access to the IRS check funds, Mr. Sullivan had to rely on credit to pay the Sullivans’ tax liability.
Finally, Respondent harmed the reputation of lawyers and the legal profession, since "[i]f lawyers are dishonest, then there is a perception that the system, too, must be dishonest."11 Indeed, Ms. Sullivan remarked that her experience with Respondent diminished her view of the legal profession.
ABA Standards 4.0-7.0 – Presumptive Sanction
Suspension is the presumptive sanction under the ABA Standards for the four rule violations affirmed by the Colorado Supreme Court in this case. ABA Standard 4.32 calls for suspension when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, thereby causing the client injury or potential injury, as Respondent did when she violated Colo. RPC 1.7(a)(2). Likewise, suspension is the presumptive sanction under ABA Standard 4.12 for Respondent's reckless violations of Colo. RPC 1.15A(a) and (c) ; that standard applies when a lawyer knows or should know that she is dealing improperly with client property and causes the client injury or potential injury. Finally, Respondent's reckless violation of Colo. RPC 8.4(c) is addressed by ABA Standard 7.2, which provides that suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.12 ABA Standard 9.0 – Aggravating and Mitigating Factors
Aggravating circumstances include considerations that justify an increase in the degree of the sanction to be imposed, while mitigating factors warrant a reduction in the severity of the sanction.13 On remand, the Hearing Board majority applies six factors in aggravation, one of which we weigh heavily, and three factors in mitigation.
Aggravating Factors Dishonest or Selfish Motive – 9.22(b): By concealing the IRS check until she applied the funds from the check to her earned fees, Respondent acted with a motive both selfish and dishonest. Respondent prioritized her compensation above her duty to her client, thereby adversely affecting her representation.14 Respondent also neglected her duties to the public and the legal system while endeavoring to obtain payment for her bill. We acknowledge, however, that Respondent applied the funds from the IRS check toward fees that she had earned, and we thus accord this factor average aggravating weight.15 Pattern of Misconduct – 9.22(c): Respondent prioritized the payment of her fee over Ms. Sullivan's interests when she pressured Ms. Sullivan to sell marital assets without advising Ms. Sullivan about the possible consequences. Respondent again elevated her own interests over Ms. Sullivan's by accepting the IRS check as payment without investigating the attendant risks to her client. In order to advance her own interest in getting paid, Respondent then turned a blind eye to her duty to counsel Ms. Sullivan to disclose the IRS check. We find these acts amount to a pattern of misconduct. But because the misconduct can be traced to a core issue—Respondent's inappropriate pursuit of collecting her fees—we accord this factor limited weight.
Multiple Offenses – 9.22(d): The Colorado Supreme Court determined that Respondent violated four ethical rules. Yet each of Respondent's offenses flowed from her campaign to collect the unpaid fees for her work in the Sullivan case. Because Respondent's offenses share this common thread and do not demonstrate a wider range of misconduct, we believe this factor warrants limited aggravating weight.
Submission of False Statements During the Disciplinary Process – 9.22(f): At the disciplinary hearing, Alldredge testified that Respondent filed a request for investigation with disciplinary authorities against her based on Alldredge's demands that Respondent return the funds from the IRS check. Corroborating Alldredge's testimony is a transcript from the show cause hearing in the dissolution proceeding held on October 9, 2019, showing that Respondent represented to the court that she had reported Fox and Alldredge to disciplinary authorities.16 But at the disciplinary hearing Respondent denied that she filed a grievance against Alldredge. We find that Respondent made a false statement in her testimony and failed to correct the misstatement. We accord this false statement minimal weight for sanctions purposes given its lack of relevance to the issues in this case, but we note that it has the effect of diminishing Respondent's credibility.
Refusal to Acknowledge Wrongful Nature of Conduct – 9.22(g): Respondent steadfastly refused to acknowledge the wrongful nature of her conduct. At the disciplinary hearing Respondent contended that she was merely expressing a reasonable belief that she is innocent. Were it not for the bald pecuniary motive underlying her conduct around the IRS check and her communications with Ms. Sullivan regarding the payment of her bills—including her statement that her bill, rather than her client, was her highest priority—we might be more inclined to adopt her viewpoint.17 We also take into account the fact that Respondent's refusal to recognize her misconduct after she withdrew from the case, or even to concede that she erred in accepting the IRS check for payment, prolonged the Sullivan litigation, causing the parties’ legal costs to balloon. Accordingly, this factor warrants considerable aggravating weight.
Substantial Experience in the Practice of Law – 9.22(i): We give this aggravating factor average weight. Respondent has practiced law in Colorado since 1995.
Mitigating Factors Absence of Prior Discipline – 9.32(a): Respondent has no history of discipline, which we accord average weight in mitigation.
Cooperation with Disciplinary Proceedings – 9.32(e): At the hearing, and at earlier times during the case, the People represented that Respondent cooperated fully with the disciplinary proceedings. We therefore accord this factor average weight in mitigation.
Character or Reputation – 9.32(g): The Hearing Board heard testimony that Respondent enjoys a positive reputation among the Colorado family law bar and has served as chair of the Colorado Bar Association's family law section. She has also chaired the educational committee within that section. Further, Respondent is well known for running the Family Law Basic Skills seminar, which she has managed since 2009. At the hearing, Fox and Alldredge each confirmed Respondent's good reputation. Fox stated that he referred clients to Respondent in the past, and Alldredge said that she once contacted Respondent with questions about family law. Both witnesses considered Respondent's conduct in the Sullivan case to be out of character.
Respondent called two clients to testify on her behalf. One client lauded Respondent for her toughness and her willingness to go "toe-to-toe" with the opposing counsel in the client's child custody case. Another client similarly testified that Respondent was a fierce advocate for her while remaining child-focused, caring, and honest.
The Hearing Board majority acknowledges that Respondent has enjoyed a high regard among family law practitioners in Colorado. We find that this factor should be applied in mitigation, and we accord it above-average weight.
Analysis Under ABA Standards and Case Law The Hearing Board is cognizant of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,18 mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."19 Though prior cases can inform through analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.20 We take into account that in cases involving multiple types of lawyer misconduct, the ABA Standards recommend that the ultimate sanction should be at least consistent with, and generally greater than, the sanction for the most serious disciplinary violation.21 Colorado cases involving the type of rule violations before us support a period of suspension. Cases in which a lawyer converts funds and engages in dishonest conduct point toward a term of suspension that lasts longer than one year. In In re Fischer , for instance, the Colorado Supreme Court reversed an order of disbarment and suspended a lawyer for one year and one day based on the lawyer's misappropriation of funds from marital assets while representing a client in a dissolution proceeding.22 The lawyer sold marital property pursuant to the parties’ settlement agreement, which the court had approved as an order.23 The lawyer knowingly disbursed the proceeds from the sale and paid himself for attorney's fees, even though the disbursements were not authorized under the settlement agreement and order.24 The Colorado Supreme Court determined that the lawyer's misappropriation of the third-party funds entrusted to him warranted a suspension in light of the mitigating factors, including that the lawyer conducted the unauthorized transactions in the open, paid restitution to address the injuries from his misconduct, and expressed remorse.25 The Fischer court noted three aggravating factors: a remote letter of admonition, the lawyer's substantial experience in the practice of law, and the lawyer's dishonest or selfish motive.26 But the factors added little aggravation under the facts of the case, as the lawyer did not take payment beyond his earned fees and in part had acted out of concern for his client's welfare.27 Though the lawyer admitted that he violated Colo. RPC 3.4(c), the admission did not factor heavily in the Colorado Supreme Court's decision, as the lawyer's admission was inconsistent with his assertion that he was not aware he violated a court order when he disbursed the funds.28 In People v. McGrath , the Colorado Supreme Court approved a stipulation to suspend a lawyer for one year and one day after the lawyer misappropriated garnished payments that he had received in satisfaction of a judgment he obtained for his client.29 The lawyer deposited some of the garnished funds into his operating account while misrepresenting to his client that he had deposited all of the funds into his trust account.30 The lawyer later made the same misrepresentation to disciplinary authorities.31 Though the lawyer's misconduct included his neglect of his client's matter, the McGrath court relied on ABA Standard 4.12 to suspend the lawyer for one year and one day, stating that suspension was the appropriate sanction when a lawyer knows or should know that the lawyer is mishandling client property, thereby potentially causing the client harm.32 The McGrath court also found that the lawyer's dishonesty aggravated his misconduct.33 Last, the Colorado Supreme Court imposed a significant period of suspension when, among other misconduct, a lawyer knowingly engaged in a conflict of interest without disclosing the conflict to his client, injuring his client.34 In that case, People v. Schmad , the lawyer attempted to settle a personal injury case with an insurer under terms similar to those that the lawyer's client had already rejected.35 The lawyer's client had an immediate need for funds to pay for therapy and rehabilitation and thus did not want to receive future settlement payments. Even so, the lawyer pressed his client to agree to a lump-sum payment of $25,000.00, from which the lawyer would take $21,000.00 for his fee, plus $85,000.00 to be paid in installments over a ten-year period. The Colorado Supreme Court approved a suspension of one year and one day, agreeing that the lawyer failed to disclose to his client the possible conflict of interest regarding the settlement amount and form of payment; failed to advise his client about her case and acted against his client and her best interests; and harmed his client during the representation.36 The Schmad court noted four aggravating factors, including the lawyer's refusal to acknowledge the wrongful nature of his conduct, his selfish motive, and his substantial experience in practicing law.37 The lawyer's absence of prior discipline was the sole mitigating factor.38 With these authorities guiding us, we turn to Respondent's misconduct. The cases discussed above point to a significant period of suspension in this case. Fischer , for instance, involved more extreme conduct but also implicated significant mitigating factors that outweighed the aggravating factors, in particular remorse and an apparent motivation to protect his client's interests. Because this case presents an inverse image of Fischer —less egregious misconduct that is nonetheless significantly aggravated by Respondent's lack of remorse for her acts and their adverse effect on the Sullivan case—we find Fischer instructive in crafting a sanction. In contrast, McGrath presents a more straightforward comparison: in that case, the Colorado Supreme Court relied on ABA Standard 4.12, as we do here, imposing a meaningful suspension after finding that the lawyer's deceptive acts aggravated his misconduct. Finally, Schmad is also analogous, as the conflict violations and factors in aggravation are similar. Here, as in Schmad , Respondent failed to avoid a conflict of interest and refused to acknowledge her wrongdoing despite harming Ms. Sullivan during the representation. Respondent also acted with a selfish motive in pursuing her fees, has substantial experience in legal practice, and has no prior discipline, further bringing the facts of this case into alignment with Schmad .
In our original opinion, we imposed a served suspension of one year and one day. In arriving at that sanction, we noted that Respondent had violated her duty of loyalty to her client, which is "perhaps the most basic of [a lawyer's] duties,"39 by elevating "her own immediate financial interests" above her client's needs.40 Indeed, we observed that Respondent's misconduct was "mercenary" at its core,41 and her absolute lack of remorse discomfited us. We also noted that Respondent's dishonest conduct implicates the legal profession's central values of truthfulness, honesty, and candor.42 Thus, it was our view then—as it is now—that the gravamen of Respondent's misconduct was her choice to advance her own interest in obtaining payment over the interests of her client, to mishandle the IRS check, and to dishonestly conceal the IRS check. Indeed, Respondent's violations of Colo. RPC 1.7(a)(2), Colo. RPC 1.15A(a) and 1.15A(c), and Colo. RPC 8.4(c) predominated our analysis, and we touched only briefly on the allegation that Respondent knowingly violated a court order. In other words, Respondent's conduct regarding the court order was of negligible consequence to us when we decided the appropriate sanction in this case. As a result, the Colorado Supreme Court's opinion—reversing our finding that Respondent violated Colo. RPC 3.4(c) but leaving in place the four rule violations which we found to be most egregious—does not at all alter our sanctions assessment, which is borne out of our deep concern that Respondent's avarice interfered with her client-centered duty of loyalty and the core value of honesty. We thus find that Respondent's misconduct warrants a served suspension of one year and one day. But even if we were to conclude that a symbolic reduction in Respondent's sanction were appropriate in light of the Colorado Supreme Court's limited remand, which we cannot find, we would remain convinced that Respondent ought to petition for reinstatement under C.R.C.P. 242.39. Indeed, in recognition of the wide discretion we are accorded when imposing sanctions,43 we conclude that protection of the public demands that Respondent demonstrate her rehabilitation, her fitness to practice law, and her compliance with disciplinary orders and rules if she wishes to reinstate her law license. In sum, we stand by our determination that a suspension of one year and one day with the requirement of reinstatement remains the appropriate sanction in this case.
III. CONCLUSION To obtain payment for her attorney's fees during her representation of a client in a marriage dissolution proceeding, Respondent pushed her client to sell marital assets without advising her client about the potential legal ramifications. She then accepted as payment from her client an undisclosed IRS refund check made out to her client and the opposing party, again without discussing the risks with her client. Thereafter, Respondent applied funds from the IRS check to her earned fees while avoiding disclosing the check to the opposing party at significant junctures in the case. Ultimately, Respondent allowed her pecuniary interest in the payment of her bill to adversely affect her representation, injuring her client, the opposing party, and, ultimately, the legal profession. The appropriate sanction for Respondent's misconduct is a served suspension of one year and one day.
IV. ORDER The Hearing Board therefore ORDERS :
1. BRENDA L. STOREY , attorney registration number 25828, is SUSPENDED for a period of ONE YEAR AND ONE DAY . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."44 2. The order issued on July 21, 2021, staying Respondent's sanction pending her appeal is LIFTED .
3. Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
4. Within fourteen days of issuance of the "Order and Notice of Suspension," Respondent SHALL comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, inter alia , to notification of clients and other state and federal jurisdictions where the attorney is licensed.
5. The parties MUST file any posthearing motion on or before Monday, November 28, 2022 . Any response thereto MUST be filed within seven days.
6. The parties MUST file any application for stay pending appeal on or before Thursday, December 1, 2022 . Any response thereto MUST be filed within seven days.
7. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Monday, November 28, 2022 . Any response challenging the amount or reasonableness of those costs MUST be filed within seven days thereafter.
/s/ Bryon M. Large BRYON M. LARGE
PRESIDING DISCIPLINARY JUDGE /s/ Laurie Albright LAURIE ALBRIGHT
HEARING BOARD MEMBER
/s/ Donald F. Cutler IV DONALD F. CUTLER IV
HEARING BOARD MEMBER
1 The Colorado Supreme Court cited C.R.C.P. 242 as governing its opinion in this matter, noting that Respondent filed her appeal after that rule took effect on July 1, 2021. Because we issued our opinion under C.R.C.P. 251, and because our task of determining the appropriate sanction on remand does not turn on the rules the Colorado Supreme Court cited in its opinion, we continue to rely on C.R.C.P. 251 in our opinion on remand.
2 The Colorado Supreme Court appointed Large as the Presiding Disciplinary Judge effective June 1, 2022. Before that date, Presiding Disciplinary Judge William R. Lucero presided over Respondent's disciplinary case.
3 See In re Storey , 2022 CO 48, 517 P.3d 1243.
4 Id. at ¶¶ 68-69.
5 See C.R.C.P. 251.1(b).
6 See "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)" at 11 (June 25, 2021).
7 Because PDJ Large did not preside in Respondent's disciplinary hearing, he refrains from voting on the sanction but participates on remand as the presiding judicial officer. See C.R.C.P. 251.19(a) (providing that two members of a Hearing Board are required to make a decision).
8 Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2d ed. 2019).
9 See In re Roose , 69 P.3d 43, 46-47 (Colo. 2003).
10 Colo. RPC 1.7 cmt. 1.
11 In re Pautler , 47 P.3d 1175, 1179 (Colo. 2002).
12 See Colo. RPC 1.0 cmt. 7A (directing that for purposes of determining the appropriate sanction for misconduct, a reckless state of mind as equivalent to "knowing").
13 See ABA Standards 9.21 and 9.31.
14 Throughout her testimony Respondent minimized the extent of her duties to Ms. Sullivan. For instance, Respondent testified that she was not concerned about any tax implications or liabilities that fell to Ms. Sullivan due to Respondent's use of the IRS check.
15 Respondent contended that she acted with an absence of a dishonest or selfish motive when she did not disclose the check because she was attempting to keep her client's confidences as required by Colo. RPC 1.6. We reject this defense because the clear and convincing evidence showed that Ms. Sullivan never forbade Respondent from disclosing the check. We therefore decline to apply this mitigating factor.
16 See "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)" at 30-31.
17 See ABA Annotated Standards for Imposing Lawyer Sanctions at 470 (noting that a lawyer's refusal to acknowledge the wrongful nature should not automatically be considered an aggravating factor).
18 See In re Attorney F. , 2012 CO 57, ¶ 20, 285 P.3d 322 ; Fischer , 89 P.3d at 822 (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).
19 Attorney F. , ¶ 20 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).
20 Id. ¶ 15.
21 ABA Annotated Standards Preface at xx.
22 89 P.3d 817, 817 (Colo. 2004).
23 Id.
24 Id.
25 Id. at 819-21.
26 Id. at 822.
27 Id.
28 Id. at 820.
29 780 P.2d 492, 492-93 (Colo. 1989).
30 Id. at 493.
31 Id.
32 Id.
33 Id. The McGrath court noted no mitigating factors.
34 793 P.2d 1162, 1164 (Colo. 1990).
35 Id. at 1163.
36 Id. at 1164. The Colorado Supreme Court also concluded that the lawyer failed to adequately prepare for his client's case and attempted to collect a fee under an unwritten fee agreement. Id.
37 Id.
38 Id.
39 Krutzfeldt Ranch, LLC v. Pinnacle Bank , 363 Mont. 366, 272 P.3d 635, 644 (2012) (citation omitted).
40 "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)" at 34.
41 "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)" at 30.
42 See In re DeRose , 55 P.3d 126, 131 (Colo. 2002) (citing Pautler , 47 P.3d at 1178-79 ).
43 Attorney F. , ¶15.
44 In general, an order and notice of sanction will issue thirty-five days after the date of a disciplinary order. In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.